**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NINGBO YINGLI ELECTRICAL APPLIANCES CO., LTD. D/B/A YINGLI DIRECT,<br><br>        Plaintiff,<br><br>v.<br><br>FLEXLATCH LLC<br><br>        Defendant. | |

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF,
<u>MONETARY RELIEF, AND DECLARATORY JUDGMENT</u>**

Plaintiff Ningbo Yingli Electrical Appliances Co., Ltd. ("Yingli Direct"), for its Verified

Complaint against Defendant FlexLatch LLC ("Flexlatch"), states as follows:

<u>**NATURE OF THE ACTION**</u>

1.      In this action, Yingli Direct seeks to put an end to Flexlatch's false

representations in the marketplace that Yingli Direct's products infringe U.S. Patent No.

11,795,741 (the "'741 patent"), a patent that Flexlatch claims to own.

2.      

3.      Flexlatch's

representations of infringement are knowingly false. Yingli Direct's products indisputably lack a

"rigid plate" that prevents one end of the latch from bending, which is a required element for all

claims of the '741 patent. Unlike the claimed alleged invention, Yingli Direct's products are

made from a single and continuous flexible piece of plastic. True and correct copies of several images of Yingli Direct's products are attached as Exhibit B, and they show that the entire product is flexible, for example as shown in the images below:

 

4.     Anyone who has seen or handled any of Yingli Direct's products can readily verify that they lack a rigid plate and thus cannot infringe the '741 patent. Flexlatch has reviewed numerous images of Yingli Direct's products and claims to have physically inspected them. Flexlatch therefore knows that Yingli Direct's products lack the required rigid plate. Flexlatch nevertheless refuses to retract its false representations.

5.     Flexlatch's representations have blocked Yingli Direct from selling its products on Amazon, which is causing Yingli Direct ongoing, irreparable harm while Flexlatch is unjustly enriched by the lack of competition. This is the third time that Flexlatch's false representations have caused Yingli Direct's products to be delisted from Amazon in the past seven months.

6.     Yingli Direct seeks injunctive relief ████████████████████, a declaratory judgment of patent non-infringement, and damages for Flexlatch's ██████████ ██████████ and its egregious, intentional misconduct.

<u>**PARTIES**</u>

7.     Plaintiff Ningbo Yingli Electrical Appliances Co., Ltd. is a company incorporated in China that operates an ecommerce store on Amazon known as Yingli Direct.

8.      Defendant FlexLatch LLC is a limited liability company, organized and existing under the laws of the State of North Carolina. On information and belief, FlexLatch LLC is wholly owned by Nicolas Fuller, who resides in Charlotte, North Carolina.

## JURISDICTION AND VENUE

9.      This Court thus has subject matter jurisdiction under 28 U.S.C. § 1331 and 1338, because this action arises under the patent laws of the United States, 35 U.S.C. § 271 et seq. This Court further has subject matter jurisdiction over related claims brought under state law pursuant to 28 U.S.C. § 1367.



10.      This Court has personal jurisdiction over Flexlatch because,

11.      Venue is proper in this Court because,

12.      In addition, this Court has personal jurisdiction over Flexlatch because it regularly does business in the State of Illinois, including selling its products to residents of the State of Illinois, and because Flexlatch has purposely availed itself of the laws of the State of Illinois by interfering with Yingli Direct's ability to sell its products to residents of the State of Illinois. Flexlatch also availed itself of the laws of this jurisdiction by filing in this Court the lawsuit against Yingli Direct                          . Venue is proper in this Court

pursuant to 28 U.S.C. § 1391(b), because a substantial part of the acts or omissions giving rise to the claims have occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

**A.** **The door latches sold by Yingli Direct.**

13.     Yingli Direct (among many other companies) sells door latches that perform a simple but useful function—they permit a door to open wide enough for small animals, like cats, to pass through while preventing large animals, like dogs, from doing so.

14.     Yingli Direct does not manufacture the door latches it sells. Rather, Yingli Direct sources them from a manufacturer based in China, which offers them at wholesale to a number of retailers for resale.

15.      The following images from Exhibit B show Yingli Direct's product in use:





16.     As shown in Exhibit B and in the exemplar images reprinted above, the latches that Yingli Direct sells are constructed from a single and continuous flexible piece of plastic, one end of which is formed into a loop to be attached to a door handle, and the other end of which

has a number of screw holes into which an adjustable pin can be screwed. The pin fits into the door frame as shown in the images above, preventing the door from being opened all the way.

17. The only non-plastic components of Yingli Direct's products are five threaded metal grommets forming the screw holes and the metal pin that can be screwed into them. The pin can be screwed into any of the screw holes, and the choice determines the width of the door opening.

18. As shown in the images attached as Exhibit B and in the image reprinted in paragraphs 3 and 15 above, the grommets and the pin do not prevent the end of the plastic strap from bending. To the contrary, both ends of the plastic strap are flexible.

19. Yingli Direct sells its door latch products on Amazon under several part numbers, or "ASINs." Yingli Direct uses different ASINs to differentiate various colors and package quantities. Listed below is a table showing an exemplar set of the ASINs, the corresponding color, packaging quantity information, as well as true and correct photographs of the product packages.

| Amazon ASIN | Product Color | Package Quantity | Product Package Photo |
|---|---|---|---|
| B0BPD1Q9YQ | White | 2 |  |
| B0BTBNJCR7 | Blue | 1 |  |

| Amazon ASIN | Product Color | Package Quantity | Product Package Photo |
|---|---|---|---|
| B0CT4PP2ZS | Blue | 3 |  |
| B0CT4LW2V3 | Yellow | 3 |  |
| B0CT4MK6DD | Pink | 3 |  |
| B0CHRTDXM7 | Black / White combo | 1+1 |  |

While the offering corresponding to each ASIN may vary in color or quantity, all door latch ASIN products have the same construction as described above: they are constructed from a single and continuous flexible piece of plastic, one end of which is formed into a loop to be attached to a door handle, and the other end of which has a number of holes into which a pin that fits into the door frame can be screwed.

**B.     The door latch claimed in the '741 patent.**

20.     Flexlatch claims to own the '741 patent, which describes a "Door Holder." A true and correct copy of the '741 patent is attached as Exhibit C.

6

21.     The specification, drawings, and claims of the '741 patent describe a door latch having at least three required elements: (1) "a flat strap of flexible material" that is sometimes referred to as a "flexlatch;" (2) a "rigid plate; and (3) a "striker plate coupler."

22.     For example, the specification states that "[t]he door holder 100 (hereinafter invention) comprises a flexlatch 200, a rigid plate 230, and a striker plate coupler 240."

23.     In the drawings, the flexlatch is labeled as 200, the rigid plate is labeled as 230, and the striker plate coupler is labeled as 240. Figures 2A and 2B, reprinted below, show the rigid plate 230 as embedded within approximately one-third of one end of the flexlatch 200:



24.     Regarding the rigid plate, the specification states that "[t]he rigid plate 230 may be a stiffener that may be embedded within the flexlatch 200" and "may establish the fixed opening width 294 by preventing a portion of the proximal 290 end of the flexlatch 200 from bending." The specification further states that "[i]n some embodiments, the rigid plate 230 may

be made of metal." The "proximal 290 end of the flexlatch 200" is the end of the flexlatch opposite the end having a loop for attaching to the door handle, as shown in Figure 2 above.

25.    The term "rigid" is a defined term in the specification, which states, "As used herein, 'rigid' may refer to an object or material which is inflexible."

26.    Claim 1 is the only independent claim of the '741 patent. Consistent with the specification and the drawings, Claim 1 includes as required elements "a flat strap of flexible material, a rigid plate, and a striker plate coupler," in addition to other required elements.

27.    Claim 1 additionally requires the following element: "the rigid plate having at least a first end portion joining with at least a portion of a proximal and of the flat strap, and the striker plate coupler formed at a second end of the rigid plate opposed to the first end portion."

28.    Claim 1 additionally requires the following element: "wherein the rigid plate establishes the fixed opening width by preventing the portion of the proximate end of the flat strap from bending."

29.    The elements of Claim 1 are incorporated into all other claims of the '741 patent. Thus, all claims of the '741 patent require, at minimum, a "rigid plate" that has "at least a first end portion joining with at least a portion of a proximal end of the flat strap," and "a second end" that is "opposed to the first end portion" and is where the "striker plate coupler" is formed. In addition, the rigid plate must be a structure that "establishes the fixed opening width by preventing the portion of the proximal end of the flat strap from bending."

30.    Yingli Direct's door latch does not have the required rigid plate claimed in all claims of the '741 patent. To the contrary, both ends of the plastic strap of Yingli Direct's product are flexible and thus can bend.

31.     Yingli Direct's door latch also differs from the door latch claimed in the '741 patent in other ways. For example, the door latch described in the '741 patent, in contrast to Yingli Direct's door latch, is not adjustable by the consumer. Rather, the specification states that "the invention 100 may be available in more than one size such that the size of the doorway opening may be selectable." In other words, to change the size of the door opening, a consumer needs to buy another size of the product described in the '741 patent.

**C.      Flexlatch files a lawsuit against Yingli Direct and others for alleged copyright infringement.**

32.     On August 30, 2023, Flexlatch filed a lawsuit in this Court against Yingli Direct and several other door latch retailers. *See FlexLatch LLC v. The Partnerships and Unincorporated Associations Identified on Schedule A*, Case No. 23-cv-06296 (N.D. Ill.). The lawsuit alleged copyright infringement and violations of the Illinois Uniform Deceptive Trade Practices Act. In the lawsuit, Flexlatch alleged that" [e]ach Defendant, without the permission or consent of the Plaintiff, has sold, and continues to sell, online infringing derivative works of Plaintiff's Copyrights" and that "[d]efendants have engaged in acts violating Illinois law, including, but not limited to, passing off their unauthorized products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of Defendants' goods, thus causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine FlexLatch Products, through Defendants' representation that Defendants' Infringing Products have Plaintiff's approval, when they do not."

33.     Flexlatch's complaint contained no specific allegations concerning Yingli Direct. Exhibit D is a true and correct copy of the allegedly copyrighted images that Flexlatch attached to its complaint, and Exhibit E is a true and correct copy of Yingli Direct's marketing materials that Flexlatch's counsel provided as alleged evidence of infringement. These exhibits show that

Yingli Direct: (1) sells a different kind of door latch; (2) does so under its own trade name; and (3) did not use any of Flexlatch's allegedly copyrighted images to market its products.

34.     Nevertheless, Flexlatch filed its complaint under seal and immediately moved *ex parte* for a temporary restraining order to cause Amazon to block sales of Yingli Direct's product on its website and freeze all of Yingli Direct's assets without limitation. The Court granted Flexlatch's *ex parte* motion for a temporary restraining order and Flexlatch's subsequent motion for a preliminary injunction based solely on Flexlatch's representations.

35.     In fact, when Yingli Direct investigated the allegations, it found that the alleged copyrighted images appeared only in an instruction pamphlet *inside* the packaging for the door latch products Yingli Direct sold. The instruction pamphlet was prepared and inserted by the manufacturer without Yingli Direct's knowledge or direction.

36.     Given that the instruction pamphlet was the only possible basis of liability, Yingli Direct decided to voluntarily remove it without conceding the merits of Flexlatch's claims. Yingli Direct then asked Flexlatch to agree to lift the sales restriction and limit the asset restraint to an amount proportionate to the *de minimus* potential damages associated with the instruction manual. Notwithstanding that there no longer was any basis for liability for sales going forward and that the potential damages were at most a *de minimus* amount, Flexlatch refused to lift the sales or asset restrictions imposed by the preliminary injunction.

37.     Yingli Direct then filed a motion to modify the preliminary injunction. On November 29, 2023, the Court granted Yingli Direct's motion and modified the preliminary injunction to allow for continued sales and to limit the asset restraint.

**D.** **After the Court allows Yingli Direct to restart sales of its products, Flexlatch submits a complaint to Amazon alleging that Yingli Direct's products infringe the '741 patent, which again stops Yingli Direct's sales.**

38.     Based on information and belief, while Flexlatch's lawsuit against Yingli Direct remained pending, and after the Court modified the preliminary injunction to remove the sales restrictions on Yingli Direct's products, Flexlatch submitted a complaint directly to Amazon alleging that Yingli Direct's products sold under certain ASINs infringed the '741 patent.

39.     Based solely on Flexlatch's representations of patent infringement, Amazon delisted Yingli Direct's door latch products sold under at least the following ASINs: B0BPD1Q9YQ, B0CHRVT42W, B0BTBNJCR7, and B0CHRTDXM7. A true and correct copy of a notice that Yingli Direct received from Amazon on February 9, 2024 (China Standard Time) reflecting the removal of the listings is attached as Exhibit F.

**E.**



40.

41.



42.

43.



44.

F.

45.

46.

47.

48. 

49.

50.

51.

███████████████████████████████████████████████████

███████████████████████████████████████████

**G.** **Without justification** ████████████████████████, **Flexlatch lodges a second complaint of patent infringement with Amazon, stopping Yingli Direct's sales for a third time.**

52. On April 9, 2024 (China Standard Time), Yingli Direct received another notice from Amazon indicating that Flexlatch had submitted a second complaint of patent infringement on the '741 Patent regarding Yingli Direct's door latch products. A true and correct copy of the second Amazon notice that Yingli Direct received reflecting the removal of the listings is attached as Exhibit J. Based solely on Flexlatch's representations of patent infringement, Amazon delisted Yingli Direct's door latch products sold under at least the following ASINs this time: B0BPD1Q9YQ, B0CT4PP2ZS, B0BTBNJCR7, B0CT4LW2V3, B0CT4MK6DD, and B0CHRTDXM7, yet again blocking the sale of Yingli Direct's door latch products. Some of the ASINs listed in the second Amazon notice overlap with the ASINs listed in the first Amazon notice such as ASINs B0BPD1Q9YQ, B0BTBNJCR7, and B0CHRTDXM7. Some of the ASINs listed in the second Amazon notice refer to different ASINs. One such ASIN, ASIN B0BPCN1XCV, is identified in Plaintiff's evidence of infringement shown in Exhibit E.

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

53. ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████

54.     On April 10, 2024 (China Standard Time), Yingli Direct received another notice from Amazon. A true and correct copy of the third Amazon notice that Yingli Direct received reflecting the removal of the listings is attached as Exhibit L.  Based solely on Flexlatch's representations of patent infringement, Amazon delisted Yingli Direct's door latch products sold under at least the following ASIN this time: B0D176Z7FL.



███████████████████████████████████████████████████████

███████

59.   ███████████████████████████████████████████

█████████████████████████████████████████

60.   As of the date of filing this Complaint, Yingli Direct is barred from selling any of its door latch products on Amazon, regardless of whether they were offered for sale under the ASINs covered in the first, second, or third Amazon delisting notices, or not covered in these three notices.

**H.   Flexlatch's assertions that Yingli Direct's door latches infringe the '741 patent** ██ ██████████████████████████████ **are knowingly false.**

61.   ████████████████████████████████████████████

████████████████████████

62.   ████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████

63.   ████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████



64.

65. Further, Flexlatch's representation that Yingli Direct's door latch infringes the '741 patent is knowingly false. At minimum, in contrast to the claims of the '741 patent, none of the door latches Yingli Direct sells have a rigid plate that prevents the end of the plastic strap from bending. To the contrary, each end of the latch is flexible, as demonstrated visually in the images attached as Exhibit B and as shown above in Paragraph 3.

66.

67. Moreover, the metal screw holes and the adjustable pin in the door latches Yingli Direct sells do not have the required characteristics of the "rigid plate" as claimed in the '741

patent. First, they are not "plates" under any reasonable interpretation of the term. Second, even if the definition of "plate" could be stretched to encompass such structures, they do not have two distinct ends, one of which is joined with the plastic strap and the other of which is the location where the striker plate coupler is "formed," as claimed in the '741 patent. Third, they do not establish the fixed opening width by preventing the end of the flat strap from bending, as claimed in the '741 patent.

68.     To be clear, Yingli Direct is anticipating possible infringement arguments here that Flexlatch has not even been willing to allege in a Court of law. In fact, Flexlatch has never communicated an element-by-element analysis of infringement to Yingli Direct, which would be required to bring a viable claim for patent infringement in Court. Nevertheless, Flexlatch has lodged its complaint with Amazon, which alone is sufficient to block Yingli Direct from competing against it in the marketplace.

69.     When the bare assertion of intellectual property rights is sufficient to bar a competitor from selling its products on a platform used by millions of customers, those who assert such rights have an obligation to do so in good faith. Here, Flexlatch's bad faith is palpable: ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████  There is no justification for Flexlatch's representations to Amazon, which ██████

████████████████████████████████████  and are knowingly false.

## I.     Yingli Direct's inability to sell its products is causing irreparable harm.

70.     The door latch product is Yingli Direct's flagship product.  It was generating well over 60% of its overall Amazon store revenue. Yingli Direct is losing sales every day that it is unable to offer its door latch products on Amazon.

71.     In addition, the lack of sales and Yingli Direct's inability to market its product on Amazon is causing Yingli Direct's products to lose customer good will, standing on the Amazon platform, and placement on Amazon's first page search results. This diminishes the visibility of Yingli Direct's products even after its product listings are reinstated. Yingli Direct's door latch product was ranked as one of the top 10 bestselling products on Amazon's Cat Doors product category; Yingli Direct's door latch product lost the coveted first page placement status as Amazon removed it from the Amazon marketplace indefinitely.  It is impossible to calculate the negative impact of being unable to list its products, especially when Yingli Direct's competitors have been able to market and sell their products without interruption.

72.     Unless the Court ███████████████████████ and orders Flexlatch to retract its complaint to Amazon, Yingli Direct has no practical recourse and will be forced to cede the Amazon platform to Flexlatch, notwithstanding Flexlatch's flagrant ███████████ ███████████████████ false representations.

**COUNT I –** ████████████████████████████

73.     Yingli Direct incorporates paragraphs 1-72 as if fully stated herein.

74.     ██████████████████████████████ ████████████████████████

75.     ██████████████████████████████

76.     ███████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████████

█████████████████

77. 

78. ████████████████████████████████████

███████████████████████████████.

79. ████████████████████████████

████████

## COUNT II – DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT

80.     Yingli Direct incorporates paragraphs 1-72 as if fully stated herein.

81.     An actual controversy exists between the parties regarding whether Yingli Direct's door latches infringe the '741 patent.

82.     Yingli Direct has an interest in the resolution of this dispute, because Flexlatch has used its bare assertions of patent infringement to interfere with Yingli Direct's ability to sell its door latches on Amazon.

83.     To establish infringement, Flexlatch must prove that Yingli Direct's door latches practice every element of at least one claim of the '741 patent.

84.     Flexlatch cannot do so, at least because Yingli Direct's door latches do not contain a "rigid plate" as claimed in Claim 1 and as incorporated into all other claims of the '741 patent.

85.     In addition, Yingli Direct's door latches do not practice several other elements of the claims of the '741 patent.

86.     This is an exceptional case that warrants the recovery of attorney fees by Yingli Direct against Flexlatch, under 35 U.S.C. § 285, because among other things Flexlatch is willfully taking positions that are knowingly false.

## COUNT III – VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS 510/2)

87.     Yingli Direct incorporates paragraphs 1-72 as if fully stated herein.

88.     By lodging a false complaint with Amazon asserting that Yingli Direct's products infringe the '741 patent, Flexlatch has disparaged the Yingli Direct's goods by false or misleading representation of fact.

89.     Specifically, by lodging its complaint, Flexlatch has represented to Amazon that Yingli Direct's door latches satisfy every element of at least one of the claims of the '741 patent, including that Yingli Direct's door latches have a rigid plate as claimed in Claim 1 and as incorporated into all other claims.

90.     Flexlatch's representation to Amazon is knowingly false, because as Flexlatch knows or should know Yingli Direct's door latches do not have a rigid plate.

91.     Flexlatch made its complaint to Amazon intending that Amazon would rely upon it to delist Yingli Direct's door latch products from Amazon and thereby block Yingli Direct from selling its door latch products on Amazon.

92.     Flexlatch's deception occurred in a course of conduct involving trade or commerce, namely a complaint lodged under Amazon's procedures for enforcing legitimate intellectual property rights.

93.     Yingli Direct is being damaged by Flexlatch's false representations through lost sales to Amazon users and lost reputation and good will on the Amazon platform.

94.     Unless Yingli Direct is granted injunctive relief requiring Flexlatch to retract its complaint, the damage to Yingli Direct will continue.

95.    Flexlatch's false representation is willful, because Flexlatch knows or should know that the representation is false, and Yingli Direct therefore is entitled to costs and attorneys' fees under 815 ILCS 510/3.

## COUNT IV – TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS

96.    Yingli Direct incorporates paragraphs 1-72 as if fully stated herein.

97.    Yingli Direct, as the operator of an Amazon storefront, has a reasonable expectation that consumers will purchase its products, provided that Yingli Direct is permitted to list them for sale on Amazon.

98.    Flexlatch knows that Yingli Direct offers door latches for sale on Amazon.

99.    By lodging a false complaint with Amazon that Yingli Direct's door latch products infringe the '741 patent, Flexlatch has caused Amazon to delist Yingli Direct's door latch products.

100.    Flexlatch purposefully lodged its complaint with Amazon, knowing that it was false, to cause Yingli Direct's products to be delisted and therefore to be unavailable for purchase by Amazon users.

101.    Flexlatch intentionally lodged a false complaint of patent infringement with Amazon, without justification, to interfere with prospective sales of Yingli Direct's door latch products to Amazon users.

102.    Yingli Direct has been damaged by Flexlatch's false complaint to Amazon through lost sales to Amazon users and lost reputation and good will on the Amazon platform.

103.    The harm to Yingli Direct is ongoing and irreparable, because Yingli Direct is being deprived of the opportunities both to make sales of its products and to maintain a good reputation and good will for its products.

## **PRAYER FOR RELIEF**

WHEREFORE, Yingli Direct respectfully requests the following relief:

(a)     Preliminarily and permanently enjoin Flexlatch to retract its complaint lodged with Amazon for infringement of the '741 patent as to Yingli Direct's door latch products;

(b)     Preliminarily and permanently enjoin Flexlatch from lodging further complaints with Amazon for infringement of the '741 patent as to Yingli Direct's existing door latch products and all future products that do not contain a rigid plate;

(c)     Enter declaratory judgment that Yingli Direct's door latch products do not infringe any claim of the '741 patent;

(d)     Award Yingli Direct compensatory damages to be proven at trial;

(e)     Award Yingli Direct punitive damages in an amount to be proven at trial due to Flexlatch's willful and malicious activities;

(f)     An accounting of all monies received and/or paid to Flexlatch as a result of its tortious actions;

(g)     Disgorge all monies received and/or paid to Flexlatch as a result of its tortious actions;

(h)     Award Yingli Direct all of its attorney fees and costs incurred in connection with this action, including pursuant to 35 U.S.C. § 285 and 815 ILCS 510/3; and

(i)     Award Yingli Direct any other relief that the Court deems just and proper.

Dated: May 1, 2024

Respectfully Submitted,

**NINGBO YINGLI ELECTRICAL APPLIANCES CO., LTD. D/B/A YINGLI DIRECT**

By: /s/ Daniel I. Konieczny
    One of Its Attorneys

Hua Chen
SCIENBIZIP, P.C.
550 S. Hope Street, Suite 2825
Los Angeles, California 90071
Telephone: (213) 426-1771
huachen@scienbizippc.com

Daniel I. Konieczny (#6275293)
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle St., 7th Floor
Chicago, IL 60604
Telephone: (312) 762-9450
Facsimile: (312) 762-9451
dkonieczny@tdrlaw.com

## VERIFICATION BY JIASHENG YANG

The undersigned, Jiasheng Yang, hereby verifies that he is the general manager for Ningbo Yingli Electrical Appliances Co., Ltd ("Yingli Direct") and as such is authorized to make this Verification. He further verifies that he has read the foregoing Verified Complaint, and on the basis of his personal knowledge, review of appropriate business records, and discussions with relevant knowledgeable persons, he believes the factual allegations to be true and correct. Specifically, as to the facts concerning Yingli Direct and its products as stated in paragraphs 3, 5, 7, 13-19, 30, 35-36, 39, 45, 52, 54, 59-62, and 70-71, he verifies that if called as a witness he can competently testify to the facts as stated therein.

Under 28 U.S.C. §1746, I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 1st day of May 2024 at _Guangdong, China_.

_Jiashong Yang_
Jiasheng Yang

## <u>VERIFICATION BY SHRUTI AGGARWAL</u>

The undersigned, Shruti Aggarwal, hereby verifies that she is an associate attorney and counsel for Ningbo Yingli Electrical Appliances Co., Ltd and as such is authorized to make this Verification. She further verifies that she has read the foregoing Verified Complaint, and on the basis of her personal knowledge, review of appropriate business records, and discussions with relevant knowledgeable persons, she believes the factual allegations to be true and correct. Specifically, as to the facts within the knowledge of counsel for Yingli Direct contained in paragraphs 2, 20, 32-34, 36-37, 40-44, 45, 53, 55-59, and 63-69, she verifies that if called as a witness she can competently testify to the facts as stated therein.

Under 28 U.S.C. §1746, I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 30th day of April 2024 at Los Angeles, California.


*/s/ Shruti Aggarwal*
Shruti Aggarwal